### HILL v. HILL.
### Patent Appeal No. 2840.

Court of Customs and Patent Appeals.
Feb. 1, 1932.

them during performance of pressure functions, said rotor members capable of relative rotary motion to cause said members to receive and discharge fluid, the teeth of one rotor having epicycloidal contours, and those of the other hypocycloidal contours, a casing including high and low pressure conduits leading to said chambers, the tooth spaces of the pinion rotor having hypocycloidal contours to roll upon the teeth of the annular rotor at the center line at full mesh."

Appellant's application, No. 607,947, was filed on December 20, 1922. The application of appellee here involved, No. 616,778, was filed on February 3, 1923. The Primary Examiner held that said application of appellee was a division of his application, No. 551,079, filed on April 10, 1922, and appellee accordingly was held to be the senior party by both tribunals of the Patent Office.

The Examiner of Interferences held that the evidence was insufficient to establish conception by appellant, prior to April, 1922, of the subject-matter of count 7, but, assuming that it did, appellant had failed to show diligence from just prior to April 10, 1922, appellee's filing date, and his own filing date, December 20, 1922. The Examiner accordingly awarded priority of invention as to this count to appellee.

The Board of Appeals held that the evidence was sufficient to establish conception of the subject-matter of count 7 by appellant prior to April 10, 1922, appellee's filing date, but concurred in the decision of the Examiner that appellant had failed to show diligence during the period within which it was necessary, and concurred in the award of priority to appellee.

The subject-matter of the count in issue, as may be gathered from the language of the count, is a rotary pressure pump for gases. It consists of an outside casing within which are two rotary gears, one within the other, both referred to as rotors. The outside rotor is fitted with teeth which project inward; said teeth meshing with co-operating teeth cut on the periphery of the inner rotor. For purposes of distinguishing between the two rotors, the outside one is commonly referred to as the annular rotor; the inner one being called the pinion, or pinion rotor. These terms will be employed in referring to the respective rotors hereinafter. The pinion has one tooth less than has the annular rotor; the diameter of the pitch circle of the pinion rotor is smaller than that of the annular rotor, said diameters bearing the same ratio to each other as the respective number of teeth

Oscar W. Jeffery, of New York City, and Harry R. Williams, of Hartford, Conn., for appellant.

Myron F. Hill, of New York City, pro se.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding, No. 50,523, declared by the United States Patent Office. There were originally seven counts in the issue, counts 1 to 6, inclusive, being awarded by both tribunals of the Patent Office to Ebenezer Hill, and the seventh being awarded to Myron F. Hill. This appeal is taken by Ebenezer Hill from that part of the decision of the Board of Appeals, affirming the decision of the Examiner of Interferences, which awarded count 7 to appellee.

Count 7 reads as follows: "7. In a rotary mechanical movement for fluids, in combination, two rotor members one within and eccentric to the other, both having tooth divisions forming rotor chambers which expand and contract during rotation, said tooth divisions having contours which have continuous fluid tight engagements between

952

on the two rotors, and the rotors are mounted eccentrically with respect to each other, the amount of eccentricity being the mean between the diameters of the respective pitch circles. Power is applied to a shaft upon which the pinion is mounted, causing said pinion to rotate; the pinion being meshed with the annular rotor, the latter also is caused to move, provision being made for its rotation within the casing of the pump. The eccentric position of the two rotors is such that relative motion between them is permitted; said relative motion being essential, of course, since the pinion has one tooth less than has the annular gear. The result of the eccentric mounting of the two rotors is that they are at full mesh at only one point for any given position of the rotors, and are farthest from full mesh at a point diametrically opposite. As the rotors are turned, those teeth moving away from the position of full mesh begin to separate, forming an inclosed space referred to as a chamber; said chamber changes in form and increases in volume as the said teeth approach the point opposite the position of full mesh, at which opposite point the volume of said chamber is a maximum; as the rotors continue to revolve beyond this point, a reverse operation results, the chamber again varying in shape and progressively decreasing in volume as it approaches the position of full mesh of the teeth. It will be understood that at all times there is a succession of such chambers about the periphery of the pinion, being of various shapes; said shapes depending upon the position of the chambers with respect to the point of full mesh, and of which some are necessarily in the process of expansion while the others are contracting. The construction is such that at all times each tooth of the pinion rotor is in engagement with one part or another of the contact surface of the annular rotor. There is a close rolling contact between the teeth of the rotors at all times throughout the cycle of rotation; thus there is maintained a fluid-tight contact which prevents leakage of gas from the chambers hereinbefore mentioned while the same are contracting, and wear is minimized by the elimination of frictional sliding-contact. The gas is introduced into the chambers while they are moving away from the position of full mesh, or, stated in another way, during that portion of the cycle when they are expanding, as heretofore detailed. When the chamber passes the point opposite the position of full mesh it begins to contract, thus subjecting the within gas to pressure. Said

pressure increases as the contraction of the chamber progresses; when said gas pressure reaches a predetermined point, the gas is discharged through the outlet passage by means which it is not necessary here to discuss.

We agree with the Board of Appeals that appellant conceived and disclosed the invention in issue prior to the filing date of appellee's parent application, April 10, 1922. The Board found that appellee was entitled to said date for conception and reduction to practice, holding that appellee's application, filed on said date, disclosed the invention involved in count 7.

There are two principal issues before us: (1) Does appellee's application filed on April 10, 1922, disclose the said invention? (2) If it does, appellant being the prior conceiver, was he (appellant) diligent in reducing the invention to practice?

We will first consider the question of whether appellee's parent application does, in fact, disclose the invention embodied in count 7. If it does not, it will be unnecessary to consider the question of appellant's diligence because, in such case, upon the record before us, appellant was not only the first to conceive, but also the first to reduce to practice.

It will be observed that count 7 calls for two rotor members, one within and eccentric to the other, both having tooth divisions forming rotor chambers which expand and contract during rotation. The contours of the tooth divisions are such as to provide continuous fluid-tight engagements between them during the performance of pressure functions, and the said rotor members shall be capable of relative rotary motion to cause the said members to receive, compress, and thereafter discharge fluid. The teeth of the pinion rotor are described as having epicycloidal contours, and those of the other as having hypocycloidal contours, and the tooth spaces of the pinion rotor are described as having hypocycloidal contours to roll upon the teeth of the annular rotor at the center line at full mesh.

At this point, it may not be out of place to observe that an epicycloidal curve is a curve generated by the motion of a point on the circumference of a circle which rolls upon the convex side of a fixed circle, and a hypocycloidal curve is a curve described by a point on the circumference of a circle which rolls upon the inner side of another circle.

The real question in issue upon this branch of the case is whether appellee, in his

parent application, disclosed tooth spaces of the pinion rotor having hypocycloidal contours. The Board of Appeals agreed with the finding of the Examiner of Interferences that appellee in said application did disclose such hypocycloidal contours in the following language from the specification: "The * * * tooth spaces of the pinion may be determined and formed by means of a cutter having the form of an annular tooth, rotated about the pinion blank in the successive positions assumed by the tooth of the annular with relation to the pinion. * * * "

With respect to this disclosure, the Examiner of Interferences said: " * * * With such a cutter operated in this manner, it seems clear that if the distance between the cuts is made small enough, the tooth spaces cut in the pinion will be such that the teeth of the outer rotor will have constant rolling contact with them, since the teeth of said outer rotor have the same shape as the tooth portions of the cutter. It clearly appears from the application of E. Hill and from the record of the parties that a hypocycloidal tooth can have true rolling contact only with a hypocycloidal tooth space. * * * "

Previously in said specification, appellee had clearly described the annular tooth referred to in the above quotation as having cycloidal curves, and he further described the manner of forming the cycloidal curves of said annular tooth, thus disclosing that the annular tooth would be hypocycloidal in form, which, it is conceded, was old in the prior art.

The conclusion of the Examiner as to appellee's parent application disclosing hypocycloidal tooth spaces upon the pinion was concurred in by the Board of Appeals. ·

Appellant contends that both the Examiner and the Board erred in this conclusion. In his brief he states:

"The only teeth mentioned are described as annular, not hypocycloidal and epicycloidal, and the teeth and tooth spaces of the pinion are said to be determined and formed by a cutter having the form of an annular tooth. If the cutter is of the form of an annular tooth the tooth spaces would be annular and neither the teeth nor the tooth spaces would have epicycloidal and hypocycloidal contours, as required by count 7.

"The basic factors were overlooked by the Examiner, and the Board apparently were confused by what seemed to be an abstruse question and followed the Examiner who

was mistaken as the following is believed to show.

"The outer gear has a larger pitch diameter than the inner gear, and has one more tooth. If a cutter having the shape of a hypocycloidal tooth of an outer gear is used (which hypocycloid is formed on the larger pitch circle of the outer gear) for cutting a tooth space in an inner gear, which has a smaller pitch circle and fewer teeth, the result would not be a complementary hypocycloidal space, because of the difference in diameters of the pitch circles."

With regard to the use of the word annular by appellee in his parent application, where he describes the formation of the tooth spaces of the pinion by means of a cutter, appellant assumes that the word annular is used in its general sense, whereas it is clear that it should be construed as referring to a hypocycloidal tooth upon the annular or outer rotor. With regard to appellant's contention that, because the outer rotor has a larger pitch diameter than the inner rotor, and has one more tooth, a hypocycloidal tooth of the outer rotor could not be used for producing a hypocycloidal tooth space of a pinion having a smaller pitch diameter, we think that would be true if it were desired to produce upon the inner gear an exact complement of the outer tooth. But that is not desired; what is desired and called for by the count in issue are tooth spaces of the pinion rotor having hypocycloidal contours to roll upon the teeth of the annular rotor at the center line at full mesh. We think that appellee's method of producing pinion tooth spaces by means of a cutter, as described in said parent application, produces tooth spaces having hypocycloidal contours, as called for by the count; at any rate, both tribunals of the Patent Office so found, and, upon such a highly technical question, before we could find that error had been committed in this respect, such error should clearly appear. Not only are we not satisfied that error has been committed, but it appears to us that the conclusion of the Patent Office tribunals was correct, and that the method of generation of pinion tooth spaces here considered does result in true rolling contact between the annular tooth and the pinion tooth space; it apparently being conceded by both parties that a hypocycloidal tooth can have true rolling contact with only a hypocycloidal tooth space.

With reference to the statement of the Examiner that, if the distance between the cuts is made small enough, the tooth spaces

in the pinion will be such that the teeth of the outer rotor will have constant rolling contact with them, appellant contends that there is nothing in the disclosure in the parent application of appellee indicating that the cuts should be made small enough to secure this result, and hence the disclosure, he contends, is too indefinite to be relied upon. With this contention we do not agree. Obviously, the reference by the Examiner to the distance between cuts being small enough does not refer to the distance between tooth spaces, but to the cuts being made as the cutter is rotated upon the pinion blank. Obviously, if the feed is too rapid and the cuts are made too far apart, the rolling contact desired will not be secured; but if the cutter is slowly advanced upon the pinion blank and minute cuts are made upon each advance, or, as the Examiner puts it, if the distance between the cuts is small enough, rolling contact between the pinion tooth space and the annular tooth will be secured, and the space will be hypocycloidal in contour. The Patent Office tribunals were evidently of the opinion that the disclosure was sufficiently definite to enable one skilled in the art to generate the hypocycloidal tooth spaces upon the pinion called for by the count, and it has not been demonstrated to us that this was erroneous.

We find no error in granting appellee the date of April 10, 1922, for conception and reduction to practice of the invention in issue.

In view of our conclusion upon the question of appellant's diligence in reducing the invention to practice, it is unnecessary to consider appellee's contention that, upon the record before us, he is entitled to a date of conception and disclosure of the invention prior to the date of appellant's conception and disclosure.

We come now to consider the question of the diligence of appellant. As heretofore stated, the Examiner of Interferences found that appellant had not established conception of the invention prior to April 10, 1922, the date of appellee's constructive reduction to practice, but further found that, assuming that appellant had established conception prior to said date, he was lacking in diligence in reducing the invention to practice, and awarded priority of invention as to said count 7 to appellee. The Board of Appeals disagreed with the Examiner of Interferences as to the date of appellant's conception and disclosure, and found that he had conceived and disclosed the invention in November, 1921; but agreed with the Examiner

that appellant was lacking in diligence in reducing the invention to practice from just prior to April 10, 1922, the date accorded appellee for conception and reduction to practice, until his, appellant's, constructive reduction to practice on December 20, 1922, when he filed his application. Both tribunals specifically held that it had not been established that appellant was doing anything toward reducing the invention to practice during the first part of the period in which he was chargeable with diligence; the Examiner of Interferences finding specifically that there was no evidence of any activity upon appellant's part in reducing the invention to practice in April, May, or June, 1922, while the Board held that he was lacking in diligence during the first part of the period within which he was chargeable with diligence.

While we agree with the Board of Appeals that appellant conceived and disclosed the invention in November, 1921, it is important to note that there is no evidence that he ever prepared, or caused to be prepared, working drawings of the invention until July, 1922, notwithstanding the fact that he testified that on December 1, 1921, he "had the contour properly planned and thoroughly in mind." If this be true, due diligence required that by April 10, 1922, he should have been actively taking steps to reduce the invention to practice, while the fact is that the evidence does not establish that appellant, prior to June 27, 1922, did anything, either toward actually reducing the invention to practice or filing an application for a patent for it.

Appellant contends that he was, during April, May, and June, 1922, negotiating with appellee for a license to use "whatever M. F. Hill had in the way of his pump or structure," so that he could combine such features as appellee had patented with the improvements which are the subject of this interference. He further testified that these negotiations were dropped and that at no time was it necessary for him to acquire any patent rights that appellee may have had in order to enable him, appellant, to utilize the invention here involved.

In view of these facts, it is clear that such negotiations can have no bearing upon the question of appellant's diligence.

We are of the opinion that appellant has not established any activity in reducing the invention to practice from just prior to April 10, 1922, appellee's filing date, to the latter part of June of the same year.

Appellant further contends that, conced-

ing this to be a fact, considering the intricate nature of the invention and the necessity of providing a complicated structure for its embodiment, a period of somewhat less than three months of inactivity would not constitute lack of diligence in reducing the invention to practice. Appellant, in support of this contention, cites the case of Beidler v. Caps & Leininger, 36 F.(2d) 122, 125, 17 C. C. P. A. 703, where we said, speaking of the invention there involved: "Were this invention intricate and complicated, requiring extraordinary skill in building a machine to reduce it to practice, and requiring study and continued thought in planning the building of it, a different situation might exist. * * * "

■ The foregoing is, of course, a correct statement. In the case of a simple invention easily reduced to practice, little weight would be given to evidence that the inventor actively occupied himself over a long period of time in reducing it to practice, while, in the case of an intricate and complicated invention, it might require, in the exercise of due diligence, a long period of time in which to perfect and reduce it to practice; but in either case there must be reasonable activity in reducing the invention to practice. Merely because an invention is intricate and complicated does not excuse nonactivity in reducing it to practice.

We do not think the evidence establishes that appellant did anything toward reducing the invention to practice between the time of his conception in November, 1921, and June 27, 1922. During a portion of this time he was not chargeable with diligence, viz., from the time of his conception until just prior to April 10, 1922, but from that time forward to his reduction to practice he was so chargeable, and we do not think that nonactivity by appellant from immediately prior to April 10, 1922, to June 27, 1922, can be otherwise regarded than as a lack of diligence in reducing the invention to practice.

Appellant relies upon the case of Jones v. Evans, 46 F.(2d) 197, 18 C. C. P. A. 866, in support of his contention that nonactivity during the time above stated did not constitute lack of diligence. In that case, we said that on the question of diligence each case must be decided upon its own facts and that all the surrounding circumstances must be considered. The facts in that case disclosed that the inventor was as active in reducing the invention to practice as the circumstances permitted; that extensive and intricate computation were required as to the character of transformers necessary for the embodiment of his invention, and that such calculations were made and transformers secured with reasonable expedition.

In the case at bar, it is not established that there was any activity by appellant, in either cutting the gears embodying the invention or building a structure in which the invention could be used, during the period from immediately prior to April 10, 1922, to June 27, 1922.

■ The rule is well established that appellant had the burden of showing that immediately before appellee entered the field, and at that time, he, appellant, was exercising due diligence in perfecting his invention and attempting to reduce it to practice. Martocello v. Kobash, 39 F.(2d) 677, 17 C. C. P. A. 1095.

We agree with the Patent Office tribunals that the evidence does not establish such diligence.

■ It appears that, after the original certification of the transcript of record by the Commissioner of Patents, appellee suggested a diminution of the record and proceedings in said cause, whereupon this court issued a writ of certiorari, pursuant to which certain additions to the record were certified to the court by the Commissioner of Patents and printed. The court, in issuing the writ, ruled that the assessment of costs for the printing of such additions to the record should await the final determination of the case. The additions to the record consist of what purports to be an extract from an application for patent filed by appellee in 1921, and certain claims of his application of April 10, 1922; said claims not having been included in connection with the portions of said last-named application originally certified. The additions also included a decision by the Law Examiner of the Patent Office, rendered on December 1, 1924, in which appellee was granted the right, over the opposition of appellant, to make the claim which is now count 7 here involved. With respect to the addition to the record comprising the extract from appellee's application of 1921, had we not found lack of diligence by appellant in reducing the invention to practice, it would have been necessary for us to consider appellee's contention that said extract disclosed the invention in issue and should be considered by us. Appellant therefore will pay the costs of printing this portion of the additions to the record, as it should have been originally certified. With respect to the oth-

er additions to the record, we are of the opinion that under no view of the case were they material to its proper determination, and appellee will pay the costs of printing such additions.

The decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, Associate Judge, concurs in the conclusion.